UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMAD ALIYEV,<br><br>                   Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, et al.,<br><br>                   Respondents. | Case No.: 3:26-cv-01119-CAB-JLB<br><br>**ORDER GRANTING HABEAS PETITION**<br><br>**[Doc. No. 1]** |

     Pending before the Court is Petitioner Samad Aliyev's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [Doc. No. 1 ("Petition").] Petitioner claims that he is detained by Immigration and Customs Enforcement ("ICE") in violation of the Fourth and Fifth Amendments and the Administrative Procedure Act. He seeks immediate release. Respondents filed a response, [Doc. No. 4], and Petitioner filed a traverse, [Doc. No. 5]. For the following reasons, the Court **GRANTS** a writ of habeas corpus and **ORDERS** Respondents to immediately release Petitioner from custody under the same conditions of release that existed immediately prior to his February 13, 2026 detention.

///

///

///

///

## I. BACKGROUND

Petitioner is an Azerbaijani national who entered the United States with his family on November 10, 2022, presented himself to immigration authorities, and was granted parole under 8 U.S.C. § 1182(d)(5) until November 9, 2023. [Petition at 2; Doc. No. 4 at 2.] The Department of Homeland Security ("DHS") commenced removal proceedings against Petitioner, classifying him as an arriving alien and charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). [Doc. No. 4-1 at 2; Doc. No. 4 at 2.] Since that time, Petitioner received work authorization and filed for asylum. [Petition at 2, 12.]

On February 13, 2026,[1] Petitioner was working as an Uber driver and got a pick-up request at Camp Pendleton. [*Id.* at 3.] He drove up to the base entrance and was questioned by the military personnel at the gate; they detained him until ICE arrived and took Petitioner into custody. [*Id.*] Petitioner remains detained at the Otay Mesa Detention Center. [*Id.*]

Respondents do not refute any of Petitioner's asserted facts. [*See generally* Doc. No. 4.]

## II. LEGAL STANDARD

A writ of habeas corpus challenges the legality of a petitioner's custody and seeks to secure release from that illegal custody. Under 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." The petitioner bears the burden of demonstrating that he is in illegal custody. *See Martinez v. Noem*, No. 25-CV-2740-BJC-BJW, 2025 WL 3171738, at *2 (S.D. Cal. Nov. 13, 2025).

## III. DISCUSSION

### A. Jurisdiction

Respondents challenge this Court's jurisdiction based on 8 U.S.C. § 1252(g) and

---

[1] Respondents state that Petitioner was detained on February 14, 2026. [Doc. No. 4 at 2.] The difference is immaterial to the case and so the Court proceeds with Petitioner's asserted date.

§ 1252 (b)(9).  [Doc. No. 4 at 2–4.]  Because Petitioner challenges the legality of his detention and not the merits of his immigration proceedings, the Court finds no jurisdictional challenge from either statute.  *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(b)(9) did not present a jurisdictional bar to the review of claims by detainees who were denied bond hearings and subjected to mandatory detention pursuant to 8 U.S.C. § 1226); *Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (holding § 1252(b)(9) was not a jurisdictional bar to challenge of detention authority under 8 U.S.C. § 1226(c)); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (explaining that § 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders'" and does not bar the "many other decisions or actions that may be part of the deportation process" (emphasis in original)); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly.").

### B. Merits

Immigration officials may parole certain noncitizens into the United States "temporarily under such conditions [immigration officials] may prescribe . . . for urgent humanitarian reasons or significant public benefit[.]"  8 U.S.C. § 1182(d)(5)(A).  DHS's implementing regulations provide that parole is automatically terminated without written notice at the expiration of the time for which parole was authorized.  8 C.F.R. § 212.5(e)(1)(ii).  Here, Petitioner does not dispute that his parole expired on November 9, 2023.  [Doc. No. 5 at 19; Doc. No. 1-3 at 2.]  Respondents therefore argue that under § 1182, Petitioner has rightly been "return[ed] to the custody from which he was paroled"—namely, mandatory detention as an applicant for admission under 8 U.S.C. § 1225(b)(2).  [Doc. No. 4 at 4–5.]

That does not end the question, however.  Petitioner claims a liberty interest under the Due Process Clause of the Fifth Amendment, which was violated when he was detained

without individualized consideration of his circumstances and an opportunity to contest his detention.  Respondents do not address this constitutional claim.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Though the government may have significant discretion to detain or release a noncitizen initially, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if they fail to live up to the conditions of release.'"  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (cleaned up) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Indeed, many courts in the Ninth Circuit have held that the expiration of parole does not extinguish a petitioner's entitlement to due process.  *See Osaretin v. Warden, Otay Mesa Det. Ctr.*, No. 25-CV-3612-JES-MSB, 2026 WL 280077, at *2 (S.D. Cal. Feb. 3, 2026) ("Courts have repeatedly held that liberty interests do not expire when parole does."); *D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP (HC), 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026); *Martinez v. LaRose*, No. 25-CV-3308 JLS-MSB, 2025 WL 3677938, at *4 (S.D. Cal. Dec. 18, 2025); *Astafev v. Warden, Otay Mesa Detention Ctr.*, No. 3:26-CV-00313-RBM-AHG, 2026 WL 654247, at *4 (S.D. Cal. Mar. 9, 2026)*;* *Quiroz, v. LaRose*, No. 26-CV-866 JLS-DEB, 2026 WL 673822, at *2 (S.D. Cal. Mar. 10, 2026); *Omer G. G. v. Kaiser*, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025); *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1167 (D. Nev. 2025).

Here, the Court also finds that Petitioner has a protected liberty interest in his release.  Upon arrival, he was determined to not be a danger to the community or a flight risk.  [Petition at 16.]  There is no evidence that this determination has changed since Petitioner's arrival.  *See, e.g., Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was

neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1177 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).  And though his parole expired approximately two years prior to his recent detention, Respondents offer no evidence that during that time officials tried to detain Petitioner.  Petitioner thus justifiably continued to rely on and take advantage of his continued freedom by pursuing his asylum case, seeking and receiving work authorization, integrating into his community with his family, and complying with the terms of his release.

Having found that Petitioner has a protected liberty interest, the Court proceeds to determine the protections required before he can be deprived of that interest. Petitioner asserts that he was entitled to notice and a pre-deprivation hearing prior to his re-detention. [Doc. No. 5 at 19.]  Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). [Doc. No. 4 at 4–5.]  The Court agrees with Petitioner.

The Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  The Court reaches that same conclusion here by analyzing the factors from *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).  These factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three *Matthews* factors support that Petitioner is entitled to be notified of the individualized reasons for his detention and to have an opportunity to be heard in opposition before he is detained.  First, as discussed above, Petitioner has a significant private interest in remaining out of custody.  Second, the risk of an erroneous deprivation of his interest is high as *no procedures* were used to ensure that Petitioner was

not erroneously deprived of his liberty interest. He was detained without any warning simply because he responded to an Uber pick-up request at a military base. Petitioner has no criminal record, a pending asylum application, and has complied with the terms of his release for the last three years. Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. In particular, Respondents make no argument supporting the need for Petitioner's exigent detention without any procedural protections—for example that he now poses a danger to the community or intends to imminently flee—or that requiring notice, reasoning, and a pre-detention hearing would be too burdensome on Respondents.

Based on the foregoing, the Court holds that Petitioner is detained in violation of the Due Process Clause of the Fifth Amendment and so **GRANTS** a writ of habeas corpus. The Court declines to address Petitioner's additional claims based on the Fourth Amendment and the Administrative Procedure Act.

## IV.   CONCLUSION

The Court **GRANTS** Petitioner a writ of habeas corpus and **ORDERS** Respondents to immediately release Petitioner from custody under the same conditions of release that existed immediately prior to his February 13, 2026 detention. <u>The Clerk of Court shall close the case.</u>

It is **SO ORDERED**.

Dated: March 12, 2026

Hon. Cathy Ann Bencivengo
United States District Judge